**SKYSIGN INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF HONOLULU; Does 1–100, Defendants–Appellees.**

No. 99–15974.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 13, 2000

Submission Deferred Dec. 26, 2000

Re–Submitted Dec. 18, 2001

Filed Jan. 9, 2002

Denise H. Sangster (argued), Michael Jay Green, David J. Gierlach, Honolulu, Hawaii, for the plaintiff-appellant.

Gregory J. Swartz, Deputy Corporation Counsel (argued), David Z. Arakawa, Corporation Counsel, City and County of Honolulu, Honolulu, Hawaii, for the defendants-appellees.

Stuart E. Schiffer, Acting Assistant Attorney General, Elliott Enoki, United States Attorney, Douglas N. Letter and Christine N. Kohl, Attorneys, Civil Division, United States Department of Justice, Washington, DC, on the brief; Rosalind A. Knapp, Acting General Counsel, Paul M. Geier, Assistant General Counsel, United States Department of Transportation, Washington, DC, David G. Leitch, Chief Counsel, Nancy D. LoBue, Assistant Chief Counsel, Federal Aviation Administration, Washington, DC, of counsel, for the United States as amicus curiae by invitation of the court.

Before: THOMPSON, O'SCANNLAIN, and TASHIMA, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether federal law preempts a local ordinance regulating advertisements borne by aircraft.

## I

Skysign International, Inc. ("Skysign"), a Hawaii corporation, was a provider of aerial advertising on the island of Oahu. Its helicopters carried lighted signs beneath their fuselages, bearing advertisements for Skysign's clients.

At all times relevant to this appeal, Skysign operated under the authority of certificates of waiver issued by the Federal Aviation Administration (FAA). Federal regulations prohibit the operation of "restricted category civil aircraft"[1] in certain locations—"(1) [o]ver a densely populated area; (2) [i]n a congested airway; or (3) [n]ear a busy airport"—without a certificate of waiver from the FAA. 14 C.F.R. § 91.313(e). The FAA issued Skysign a certificate of waiver good for about nine months on January 8, 1996, and a subsequent one-year certificate on August 22, 1996.

The two certificates waived the restrictions of 14 C.F.R. § 91.313(e) and permitted Skysign to engage in "Night Time Aerial Advertising." Each certificate included a standardized "Note" indicating: "This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above." Each certificate also included a set of special provisions (i.e., provisions not a standard part of the waiver form). The lists of special provisions differed slightly, but each included the following language: "The operator, by exercising the privilege of this waiver, understands all local laws and ordinances

relating to aerial signs, and accepts responsibility for all actions and consequences associated with such operations."

The City and County of Honolulu, Hawaii, bars by municipal ordinance various types of signage, including "[a]ny sign which advertises or publicizes an activity not conducted on the premises on which the sign is maintained," "[a]ny ... portable sign," and "[a]ny flashing sign." Honolulu, Haw., Rev. Ordinances § 21–3.90–2(b), (c), (e) (1990 & Supp.1996).[2] Honolulu also bars the use of aircraft to display "any sign or advertising device." Id. § 40–6.1.

In both 1987 and 1996, when considering amendments to the latter ordinance, Honolulu sought the FAA's advice as to whether the ordinance was or would be preempted by federal law. In both cases, the FAA's regional counsel replied that in his agency's view, because of the pervasive federal regulation of navigable airspace, any local attempt to restrict the way in which aircraft operate within that airspace would be pre-empted.

In July 1996, Skysign ran afoul of the Honolulu ordinances for the first time. It received a citation charging it with violating § 21–3.90–2, the signage ordinance, and assessing a civil fine of $100, the statutorily prescribed amount for a first violation. It did not pay the fine, continued to operate, and subsequently received two further citations, each assessing a fine of $1,000.

Skysign appealed only the first citation to Honolulu's Zoning Board of Appeals (ZBA), but disputed the ZBA's jurisdiction over the issue, citing the waiver issued by the FAA. The ZBA upheld the validity of the citation and fine but did not decide the

---

1. This group includes aircraft that have been modified for "special purpose operations," including the carrying of "airborne signs" for advertising purposes. *See* 14 C.F.R. § 21.25(a), (b)(3).

2. After a 1999 recodification, this section now appears at § 21–7.30.

federal preemption issue. Skysign did not appeal the ZBA's judgment to the state circuit court. Rather, it filed a complaint in the U.S. District Court for the District of Hawaii, seeking a declaration that federal law preempted Honolulu from seeking to regulate navigable airspace, an injunction barring the enforcement of any local ordinance to the contrary, and damages on various causes of action under Hawaii law.

The district court granted Honolulu's motion to dismiss the federal claims on the ground that no case or controversy existed. By that time, Skysign's business was no longer operating, and the court held that Skysign could point to no likelihood of future injury. The court held in the alternative that even if a live controversy existed, the ordinances were not preempted, because the references to local law in Skysign's certificates of waiver meant that there was no conflict between federal and state regulation. Having disposed of the federal questions, the district court accordingly declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

Skysign filed this timely appeal.

## II

■ We must first address the jurisdictional question of whether a live case or controversy exists. An action for a declaratory judgment is live, not moot, if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Pub. Utils. Comm'n v. FERC,* 100 F.3d 1451, 1458 (9th Cir.1996) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)) (internal quotation marks omitted). Honolulu contended, and the district court held, that this dispute lacked the requisite immediacy because Skysign has ceased operation.

■ We note as an initial matter that the district court and the parties appear to have conflated the question of redressability, a component of initial standing to sue, with the doctrine of mootness, the requirement that the controversy remain live even after the plaintiff demonstrates initial standing. As the Supreme Court has noted, these two inquiries are quite similar; the doctrine of mootness has even been called "the doctrine of standing set in a time frame." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry Paul Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)) (internal quotation marks omitted). However, as the Supreme Court recently noted, the distinction, though subtle, is an important one, in part because mootness admits of certain exceptions that standing does not. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 190–91, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In this case, Skysign appears to have ceased its helicopter operations in the early stages of its dispute with Honolulu, such that the relevant inquiry is into standing and, specifically, the redressability component.

■ Undertaking that inquiry, we conclude that Skysign has alleged facts sufficient to support federal jurisdiction. Skysign "personally would benefit ... from the court's intervention," *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), in at least two ways. First, Skysign's complaint fairly can be read to allege that the challenged ordinance itself is what caused it to cease operations, and that the removal of that obstacle would put it back in business. *Cf. City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)

("Simply closing Kandyland is not sufficient to render this case moot.... Pap's is still incorporated under Pennsylvania law, and it could again decide to operate a nude dancing establishment in Erie."). Further, Honolulu cannot collect the $2,100 in outstanding fines if the ordinance under which it assessed them is preempted by federal law. Although the district court correctly noted that the assessed fines are for Skysign's "past conduct," that distinction does not in and of itself deprive a federal court of jurisdiction to hear a declaratory judgment action challenging the enforceability of the law under which the penalty is assessed. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 630, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). We thus conclude that Skysign had standing to bring this action and, for the same reasons, that the case has not become moot. We therefore have jurisdiction to consider this appeal.

### III

Honolulu argues that Skysign is precluded from bringing this action because the ZBA's decision was a final and binding decision on the merits entitled to preclusive effect. Although the ZBA expressly declined to address the preemption issue and reserved it for the courts, Honolulu contends that Skysign's failure to appeal the ZBA's decision to the state circuit court pursuant to Haw.Rev.Stat. § 91–14 rendered the decision final as to all issues that Skysign could have pursued on appeal, including the preemption question. [4, 5] Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in the rendering state's courts. 28 U.S.C. § 1738 (1994). This rule extends to state administrative adjudications of legal and factual issue. *Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir.1995). Hawaii state courts accord preclusive effect to the findings of administrative agencies if: (1) the issue decided in the prior action is identical to the issue in the current action, (2) a final judgment on the merits was issued, and (3) the parties in the current action are the same or in privity with the parties in the prior action. *See Santos v. State of Hawaii, Dep't of Transp.*, 64 Haw. 648, 646 P.2d 962, 965–66 (1982).

■ Because the first of these three requirements is not met, we reject Honolulu's contention that Skysign's claim is precluded. In this action Skysign seeks a determination only of whether the federal government, through comprehensive regulation, has preempted air traffic control and management by state and local governments. Although Skysign raised this identical preemption issue before the ZBA, the ZBA did not decide the issue and explicitly deferred resolution of it to the courts. Because the ZBA's decision did not address the preemption issue, it does not preclude the resolution of that issue in any other court of competent jurisdiction. Skysign's failure to appeal to the circuit court affects only the finality of the ZBA's decision; it does not constitute some kind of waiver of all related but unaddressed issues that it could have appealed.

We therefore must turn to the merits of Skysign's challenge.

### IV

■ Skysign asserts that federal law operates to bar Honolulu from implementing restrictions on aerial advertising. However, advertising is an area traditionally subject to regulation under the states' police power, and we therefore presume that federal law does not displace Honolulu's regulatory authority over advertising absent a clear statement of the federal intent to do so, either by Congress or by the FAA as Congress's delegate. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 121 S.Ct. 2404, 2414–15, 150 L.Ed.2d 532

**1116**

(2001) (citing *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), and *Packer Corp. v. Utah,* 285 U.S. 105, 108, 52 S.Ct. 273, 76 L.Ed. 643 (1932)); *accord, e.g., Nat'l Warranty Ins. Co. RRG v. Greenfield,* 214 F.3d 1073, 1077 (9th Cir.2000) ("[P]reemption will not be easily found."). Section 21–3.90–2, the general signage ordinance, is entitled to the benefit of this presumption. However, no such presumption applies to section 40–6.1, the *aerial* signage ordinance, which rather than addressing advertising generally specifically targets for regulation "an area where there has been a history of significant federal presence," *i.e.,* navigable airspace. *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000).

 We must first decide whether Congress has acted to occupy the entire field and to preempt altogether any state regulation purporting to reach into the navigable airspace. Skysign points to the statutory provision reserving to "[t]he United States Government ... exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1) (1994). As the United States points out, however, the Supreme Court has construed § 40103(a)(1)'s predecessor provision[3] as "an assertion of exclusive national sovereignty" that "did not expressly exclude the sovereign powers of the states." *Braniff Airways v. Neb. State Bd. of Equalization & Assessment,* 347 U.S. 590, 595, 74 S.Ct. 757, 98 L.Ed. 967 (1954). Although Congress has acted to exclude the states altogether from regulating certain *aspects* of air travel, such as aircraft noise and airline pricing, *see, e.g., City of Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (aircraft

noise); *Air Transp. Ass'n of Am. v. City & County of San Francisco,* 266 F.3d 1064, 1070–71(9th Cir.2001) (pricing), we agree with the United States that § 40103(a)(1) does not in and of itself exclude any state regulation of aerial advertising.

 Most of the other statutory provisions upon which Skysign relies either explicitly preempt state authority in a subfield of aviation, as described above, or give to the Secretary of Transportation or his designee the authority to regulate the navigable airspace. Honolulu does not dispute, nor could it, that federal regulations would control over an actually contradictory municipal ordinance. Skysign's argument that local regulation is displaced in the *absence* of any contradictory federal provision requires a demonstration that Congress has so completely occupied the field that federal silence is itself a policy choice rather than a mere passive deferral to local authority. We conclude that Congress itself has made no such decision, although it has left open the door for the FAA to do so through the use of its authority to develop regulations for the use of the navigable airspace. *See* 49 U.S.C. § 40103(b)(1)-(2) (1994).

 We also conclude that the FAA has not exerted its statutory authority to a degree that warrants a holding that it has preempted the entire field. The "mere volume and complexity" of the FAA's regulatory scheme do not, without some affirmative accompanying indication, compel a conclusion that the agency has sought to occupy the field to the full. *Hillsborough County v. Automated Med. Labs.,* 471 U.S. 707, 718, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985); *see also id.* at 717, 105 S.Ct. 2371

---

**3.** *See* Act of July 5, 1994, Pub.L. No. 103–272, § 1, 108 Stat. 745, 745 (providing that the recodification of transportation provisions

pursuant to which present § 40103 was enacted was intended to make no "substantive change").

("We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes.... To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence."). Further, although "the failure of the Federal Register to address pre-emption explicitly is ... not determinative," *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), we accord some weight to the agency's own views, *id.* at 883, 120 S.Ct. 1913. Although Skysign correctly points out some inconsistency between the government's position as stated in a 1987 letter from the FAA regional counsel and as set out in its amicus brief in this case, we do not think that the government has fundamentally flip-flopped on the issue of field preemption. The 1987 letter stated a tentative conclusion based on a proposed ordinance; the amicus brief sets out the considered position of the Department of Transportation and of the FAA and is consistent with the agency's own handbook for inspectors, which contains statements that appear to contemplate permissible, non-preempted state regulation of banner tow operations and aerial advertising.

▄▄ Nor does either the land use ordinance or the aerial signage ordinance encroach upon any of the subfields of aviation over which Congress has actually asserted exclusive authority. Skysign notes that Honolulu justifies its ordinance based in part on the danger that distracting aerial advertising poses to motorists below, and it attempts to argue that Congress has confided to the FAA exclusive authority over such safety concerns. However, the provision it cites directs the FAA Administrator to "prescribe air traffic regulations in the flight of aircraft (including regulations on safe altitudes) for ... protecting individuals and property on the ground." 49 U.S.C. § 40103(b)(2)(B) (1994). We do not read this provision to preclude local regulation with an identical purpose that does not actually reach into the forbidden, exclusively federal areas, such as flight paths, hours, or altitudes.[4]

▄▄ The remaining question is whether the FAA's two Certificates of Waiver preclude the enforcement of either ordinance against Skysign under principles of conflict preemption, which displace state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of federal law. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). However, state law cannot by its mere existence stand as such an obstacle when the federal government contemplates coexistence between federal and local regulatory schemes.[5] Such is the case here. The waivers that Skysign obtained contained a provision explicitly noting that "[t]he [aircraft] operator, by exercising the privilege of this waiver, understands all local laws and ordinances relating to aerial signs, and accepts responsibility for all actions and

---

4. The United States also notes that the aerial signage ordinance explicitly disavows any attempt to regulate identifying markings on an aircraft, *see* Honolulu, Haw., Rev. Ordinances § 40–6.1(b)(1), which would be much more likely to encroach upon the Administrator's authority, *see* 49 U.S.C. § 40103(b)(2)(A) (1994) (permitting the promulgation of regulations for "identifying aircraft").

5. Of course, even when the federal government has evinced its intent to leave the states and localities some room in which to regulate, some local regulation may transgress those boundaries by interfering with the underlying federal purposes. We discern no such conflict here, however.

consequences associated with such operations." The FAA's handbook for inspectors suggests the inclusion of similar provisions in waivers for banner tow operations, which also may run afoul of local aerial signage ordinances.[6] Specifically, the FAA suggests that Certificates of Waiver issued to pilots towing banners include an explicit statement that the certificate and its special provisions "do not supersede any local, state, or city ordinance(s) prohibiting aerial advertising." 2 *FAA Order 8700.1, General Aviation Operations Inspector's Handbook*, pt. 91, ch. 45, at 45–10 fig. 45–3 (1998), *available at* http://www.faa.gov/avr /afs/faa/8700/8700_vol2/2_045_00.pdf; *see also id.* § 1.9(B)(2), at 45–2 (listing the operator's responsibility for "acquiring knowledge of state and local ordinances that may prohibit or restrict banner tow operations" among the guidelines considered by inspectors when issuing certificates of waiver for such operations). Based on these provisions, we conclude that the application of Honolulu's ordinances does not impede the federal policy or purpose in issuing Skysign's Certificates of Waiver.

## V

For the foregoing reasons, although we conclude that the district court erred in

deciding that Skysign lacked standing, we agree that Skysign's federal preemption claim should have been dismissed on the merits. We further conclude that the district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over Skysign's state law claims under 28 U.S.C. § 1367(c)(3).[7]

AFFIRMED.

---

6. Skysign relies on such a case, *Banner Adver., Inc. v. City of Boulder*, 868 P.2d 1077 (Colo.1994). The Colorado Supreme Court determined that federal law occupied the field and struck down as preempted a Boulder ordinance that banned the aerial towing of commercial signs. *Id.* at 1081–83. The *Banner* court relied heavily on the FAA's Certificate of Waiver, which did not include a provision requiring compliance with state and local laws like the one in Skysign's corresponding certificate and which explicitly permitted "[b]anner [t]owing for the purpose of advertising," *id.* at 1082. Thus, as the Colorado court recognized, the Boulder ordinance failed under conflict preemption principles as well as field pre-emption analysis. *Id.* at 1084. We disagree only with the Colorado

court's discussion of field preemption, and we do so in light of *Banner*'s heavy reliance on the FAA's position as expressed in an opinion letter and in the certificate of waiver. We reach our contrary conclusion in light of the handbook provisions the United States has brought to our attention and the addition of terms to Skysign's certificate of waiver consistent with those provisions.

7. We note that had Skysign lacked standing to bring its federal claim, the district court would have lacked subject matter jurisdiction over that claim and accordingly would have had no discretion to hear the state law claims. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir.2001).